IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**CHAVA NIKE BEY,**
**formerly known as,**
**DORIS A. NETTLES,**

       Plaintiff,

v.                                                     Case 2:17-02597-MSN-cgc

**TERMINIX INTERNATIONAL, L.P.**
**and SERVICEMASTER GLOBAL**
**HOLDING, INC.,**

       Defendants.

---

**REPORT AND RECOMMENDATION ON DEFENDANTS TERMINIX INTERNATIONAL, L.P. AND SERVICEMASTER GLOBAL HOLDING, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendants Terminix International, L.P. ("Terminix") and ServiceMaster Global Holding, Inc.'s ("ServiceMaster") Motion for Summary Judgment. (Docket Entry ("D.E.") #48). Pursuant to Administrative Order 2013-05,[1] the instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED.

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

1

**I.      Introduction**

On May 17, 2017, Plaintiff Chava Nike Bey, formerly known as Doris A. Nettles, filed a *pro se* Complaint in this Court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").  (D.E. #1).  On November 21, 2017, Plaintiff filed an Amended Complaint again asserting violations of Title VII; therein, she also asserted for the first time a claim of breach of contract as well as various other claims.  (D.E. #9).

On December 19, 2017, Defendants filed a partial Motion to Dismiss the majority of these other claims added in her Amended Complaint, the only exception being her breach of contract claim. (D.E. #13).  The Magistrate Judge recommended that Defendants' partial Motion to Dismiss be granted. (D.E. #24).  The District Court adopted the Magistrate Judge's recommendation as to these claims on September 17, 2018.  (D.E. #27).  Accordingly, the claims remaining before the Court against Terminix and ServiceMaster are as follows:  Title VII discrimination; Title VII retaliation; and, breach of contract.

**II.     Proposed Findings of Fact[2]**

  *A. Plaintiff's Employment and Compensation*

Plaintiff was employed by Terminix and worked at the Memphis Contact Center ("MCC") in the Commercial Termite Renewals department.  (Plaintiff's Deposition (Pl.'s Dep.)

---

[2] In the instant case, Defendants submitted their statement of the material facts it asserts are not in dispute pursuant to Local Rule 56.1(a).  Local Rule 56.1(b) requires Plaintiff to "respond to each fact set forth by the movant" and to provide "specific citation to the record" for any fact she asserts to be in dispute.  Local Rule 56.1(b) further provides additional details on how Plaintiff must do so.  Plaintiff's Response does not comply with this Rule.  Local Rule 56.1(d) provides that "[f]ailure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."  Accordingly, it is RECOMMENDED that Defendants' Statement of Undisputed Material Facts be deemed undisputed for purposes of the instant motion.

at 25:1-13, 37:13-19, 46:1-20, 96:4-11). Terminix paid Plaintiff general sales commissions as well as commissions with specific rates for different renewal campaigns or "blitzes." (*Id*. 23:7-13).

On November 7, 2005, Terminix distributed the November 2005 Renewal Blitz Commission Plan to Plaintiff's department, which she acknowledged and signed. (*Id*. at 22:20-23:6 & Exh. 8). The November 2005 Renewal Blitz Commission Plan applied to all employees in the Residential and Commercial Renewal Departments, not just to Plaintiff. (*Id*. at 26:20-25).

On July 21, 2006, Terminix issued a revised Commercial Renewal Incentive Plan, which required the signee to acknowledge as follows: "I understand that Terminix management reserves the right to alter the employee compensation pay plan as business needs dictate with minimal notification." (*Id*. at 23:4-9 & Exh. 9). Plaintiff signed the Commercial Renewal Incentive Plan on July 24, 2006. (*Id*.) The 2006 Commercial Renewal Incentive Plan applied to all employees in Plaintiff's department. (*Id*. at 27:6-9).

On August 27, 2008, Plaintiff signed the MCC Sales Commission Plan, which stated as follows: "***Commission plan is subject to change at any time based on business need and/or the discretion of management***." (*Id*. at 24:14-25 & Exh. 10). The 2008 MCC Sales Commission Plan applied to all employees in Plaintiff's department. (*Id*. at 27-10-12).

On August 12, 2009, Plaintiff signed a new MCC Sales Commission Plan. (*Id*. at 25:15-19 & Exh. 11). The 2009 MCC Sales Commission Plan provided a 2.5% commission rate for commercial renewals. (*Id*. at Exh. 11). The 2009 MCC Sales Commission Plan applied to all employees in the commercial renewal department. (*Id*. at 25:24-26:15).

On June 22, 2011, Plaintiff signed the 2011 Compensation Plan for MCC employees. (*Id*. at 27:13-20 & Exh. 12). The 2011 Compensation Plan applied to all employees in the MCC. (*Id.* at 27:25-28:9).[3]

On February 22, 2012, Plaintiff signed the 2012 Compensation Plan Summary for Contract Center Sales Representatives. (*Id*. at 28:10-16 & Exh. 13 at 4). The 2012 Compensation Plan applied to all employees in contract center sales representative positions. (*Id*. at 28:21-25). The 2012 Compensation Plan states as follows: "Terminated Associates are not eligible to earn any variable compensation based on revenue collected after his/her termination, regardless of when the sale was proposed, signed, and/or approved, unless required by state law." (*Id*. at Exh. 13 at 2).

### B. *Jesse Allen's Termination and EEOC Activity*

Terminix fired Jesse Allen ("Allen"), Plaintiff's supervisor, when it learned that he borrowed money from Plaintiff, his subordinate, in violation of company policy. (*Id*. at 49:1-13 & Exh. 21 at 2-3). Plaintiff admits that Allen had borrowed money from her but states that it was a "personal transaction." (*Id*. at 49:3-13 & Exh. 21 at 2-3).

In 2005 or 2006, Allen filed an EEOC Charge against the company related to his termination. (*Id*. at 48:5-25 & Exh. 21 at 2-3).[4] Plaintiff refused to meet with Terminix officials or its attorneys in its internal investigation of Allen's EEOC charge, refused to provide a written

---

[3] Although Plaintiff did not dispute Defendants' statement that the 2011 Compensation Plan applied to "all employees in the MCC," Plaintiff's deposition and the 2011 Compensation Plan Summary state that it applies to persons in the role of "Contract Center Sales Representative[s]," otherwise designated with "Job Code 4820." (*See* Pl.'s Dep. At 28:2-9 & Exh. 12).

[4] Plaintiff's deposition states that she has sought to obtain information from Allen's EEOC file to "substantiate the actual dates"; however, as stated, *supra*, n.1, no such evidence was presented in the manner proscribed by Local Rule 56.1(b), or in any other manner, to dispute Defendants' Statement of Undisputed Material Facts.

statement about her knowledge thereof, and otherwise refused to participate in the company's internal investigation. (*Id*. at 58:1-14; 59:6-12; 76:17-22 & Exh. 21 at 2-3). Plaintiff believes Terminix both retaliated and discriminated against her because she would not participate in its internal investigation of Allen's EEOC Charge. (*Id*. at 75:21-24; 76:3-5). Plaintiff admits that the internal investigation of Allen's EEOC Charge occurred in 2005 or 2006. (*Id*. at 48:5-25; 59:6-9).[5]

### C. *Terminix Awards of Excellence*

The Terminix Awards of Excellence ("AOE") event was an annual convention that Terminix held to recognize certain employees in each department for performance. (*Id*. at 39:24-40:4). AOE took place each year in January. (*Id*. at 90:11-17; Stapleton Decl. ¶ 2). For example, employees invited to attend for 2010's performance would attend the January 2011 AOE conference. (Stapleton Decl. ¶ 2). Employees invited to attend for 2011's performance would attend the January 2012 conference. (*Id*.)

Plaintiff attended AOE five times—in 2005, 2006, 2007, 2009.[6] (Pl.'s Dep. at 39:12-16; 58:15-59:5; 59:17-60:13; 93:21-23; 94:5-21). Plaintiff admits that she could not attend AOE in 2008 because she was on leave of absence. (*Id*. at 58:15-20). Plaintiff also admits that she attended AOE at least twice after refusing to participate in Terminix's investigation of Allen's EEOC Charge. (*Id*. at 58:15-17, 21-22; 60:9-11). After attending for five years, Plaintiff claims that she was told she "can't go [to AOE] again year after year." (*Id*. at 39-12-16 & Exh. 19).[7]

---

[5] *See*, *supra*, n.3.

[6] The fifth year that Plaintiff attended AOE is not identified in Defendants' Statement of Undisputed Material Facts.

[7] Defendants deny that Plaintiff was told this, but for purposes of summary judgment, they have advised in their memorandum that they treat it as undisputed.

5

### D. *Race Discrimination*

Plaintiff believes that if she were of another race, Terminix would not have retaliated against her and would have "left her alone." (*Id*. at 77:16-20; 78:6-10; 120:17-22). Plaintiff additionally believes Terminix gave preferential treatment to Caucasian employees. (*Id*. at 120:23-121:9).

Plaintiff admits that she has no knowledge of anyone of another race who refused to participate in an EEOC investigation within the company. (*Id*. at 123:5-25). Plaintiff admits that seventeen African American employees from the MCC attended AOE in the years that she claimed she should have been permitted to attend. (*Id*. at 40:17-45:11; 47:22-48:4; 109:6-22). Of the employees invited to attend AOE from 2010-2014, 64.81% were African American. (Stapleton Decl. ¶ 5). Of the employees invited to attend AOE from all of the company's contact centers for 2010 to 2014, 49.18% were African American. (Stapleton Decl. ¶ 6).

### E. *Plaintiff's Termination*

On March 17, 2015, Terminix informed Plaintiff that her department and her position were being eliminated. (*Id*. at 37:13-19, 46:1-20, 96:4-11). Terminix offered Plaintiff the opportunity to apply for a different position with the company or to accept a severance package. (*Id*. at 62:24-63:7, 96:20-24, 65:6-16 & Exh. 23). Terminix presented the same options to the other employee in Plaintiff's department, Ms. Granberry. (*Id*. at 65:3-5). Plaintiff rejected both the company's severance package and the option to seek a job in a different department. (*Id*. at 63:8-14, 64:14-18). On April 17, 2015, Plaintiff's employment with Terminix ceased. (*Id*. at 93:1-17 & Exh. 33). Although Plaintiff stopped working two weeks prior to her official termination date, she was paid through her termination date. (*Id*.)

### F. *Plaintiff's EEOC Charge*

On January 13, 2016, Plaintiff signed and mailed a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC"). (*Id*. at 67:8-68:4, 68:15-20 & Exh. 25). By separate letter dated January 13, 2016, Plaintiff advised EEOC of her discrimination claims and asked to file a charge of discrimination. (*Id*. at 47:7-13 & Exh. 21). EEOC received Plaintiff's Charge of Discrimination on January 15, 2016, and Plaintiff has no knowledge to suggest that EEOC received her Charge of Discrimination sooner than that date. (*Id*. at 68:10-14, 68:21-69:6 & Exh. 25).

Plaintiff claims that Terminix breached its contract with her by refusing to pay her commissions after her termination. (*Id*. at 90:20-23, 92:15-25, Exh. 32 at 9 & Exh. 33 at 5-6). Plaintiff claims Terminix reduced the commission rate for her department from 6% to 2.5% in 2006. (*Id*. at 38:21-39:5; *see, e.g.*, *id*. at Exh. 19 at 2). Plaintiff admits Terminix reduced commissions for other employees as well. (*Id*. at 101:23-102:1).

### III. Analysis

#### A. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in

7

a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. *Title VII Discrimination and Retaliation Claims*

First, Defendants assert that Plaintiff's Title VII discrimination claim and Title VII retaliation claim are time-barred. Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). Also under Title VII, it constitutes unlawful retaliation for an employer to discriminate against any of its employees because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-(3)(a).

"Generally, the filing of a charge of discrimination with the EEOC is a condition precedent to a Title VII lawsuit." *Alexander v. Local 496 Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999) (citing *EEOC v. Atlas Paper Box*, 868 F.2d 1487, 1495 (6th Cir. 1989)), *cert. denied*, 528 U.S. 1154 (2000). "Usually, if the alleged discrimination occurred more than 180 days prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred." 42 U.S.C. § 2000e-5(e)(1); *Alexander*, 177 F.3d at 407. "However, if the alleged unlawful practice occurs in a deferral state, . . . which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act." *Alexander.*, 177 F.3d at 407 (discussing the timeliness of Title VII claims in Ohio) (internal quotation marks omitted); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995) (stating that Tennessee is a deferral state in which the 300-day rule applies).

First, with respect to whether Plaintiff was discriminated against by not being selected to attend AOE in 2008 and from 2010 to 2014, the latest date of any discriminatory act surrounding

9

her non-selection would have been in January 2015, when the AOE event was held for the 2014 calendar year. In fact, Plaintiff's Response states that she was well aware of her non-selection in February 2015, at which time she confronted a sales manager to discuss it. (Pl.'s Resp. at 9). As for the date after which claims must have accrued to be timely, the undisputed evidence demonstrates that the EEOC Complaint could not have been received any earlier that January 13, 2016, the date on which it was mailed. Thus, the claims contained in the EEOC Charge must have occurred on or after March 19, 2015 to be timely, which is 300 days prior to the mailing of the EEOC Charge. The final AOE non-selection undisputedly occurred prior to that date. Accordingly, it is RECOMMENDED that there is no genuine dispute of material fact as to whether any of Plaintiff's non-selections to AOE occurred on or after March 19, 2015. Therefore, it is RECOMMENDED that Plaintiff's Title VII discrimination claim on the basis of non-selection for these AOE events is time-barred pursuant to 42 U.S.C. § 2000e-5(e)(1).

Second, with respect to Plaintiff's termination, she admits Terminix notified her on March 17, 2015 that her department was closing and her position would be eliminated. Although Plaintiff's employment and compensation did not cease until April 17, 2015, a plaintiff's cause of action "accrues when [she] receives a notice of termination, not when [her] employment actually ceases." *Janikowsi v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987) (citing *Chardon v. Fernandez*, 454 U.S. 6 (1981) (reasoning that "the proper focus is on the time of the *discriminatory* act, not the point at which the *consequences* of the act become painful"); *Delaware State College v. Ricks*, 449 U.S. 250 (1980)); *see also Lorraine Schwarz v. Berrien Springs-Oronoko Police Dep't*, No. 1:98-cv-88, 1999 WL 819639, at *6 n.6 (W.D. Mich. Feb. 24, 1999) (reasoning that "the limitations period began to run when the termination decision was

made and [plaintiff] was notified, even though she continued her employment after that time"). Accordingly, it is RECOMMENDED that there is no genuine dispute of material fact that Plaintiff was notified of her employment termination after March 19, 2015. Therefore, it is RECOMMENDED that this Title VII discrimination claim is time-barred pursuant to 42 U.S.C. § 2000e-5(e)(1).

Third, with respect to Plaintiff's allegations of retaliation for refusing to participate in the internal investigation pertaining to Allen, the undisputed material facts demonstrate that this investigation occurred in 2005 and 2006. Although Plaintiff argues that her non-participation in this investigation eventually gave rise to her AOE non-selections in certain years and to her eventual termination, as already stated, all of these employment actions occurred more than 300 days before her EEOC Charge was filed. Accordingly, it is RECOMMENDED that there is no genuine dispute of material fact that Plaintiff's non-participation in the internal investigation pertaining to Allen gave rise to any employment action that occurred within 300 days prior to her EEOC Charge. Thus, it is RECOMMENDED that this Title VII retaliation claim is time-barred pursuant to 42 U.S.C. § 2000e-5(e)(1).

### C. Breach of Contract Claim

Next, Defendants assert that they are entitled to summary judgment on Plaintiff's breach of contract claim. Under Tennessee law, to establish a breach of contract, a plaintiff must show as follows: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of the contract; and, (3) damages caused by the breached contract." *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816-17 (Tenn. Ct. App. 2011) (internal quotation marks omitted).

Here, it is undisputed that not one but multiple enforceable contracts were executed during Plaintiff's employment tenure.  Thus, the first requirement is met.  However, the crux of Defendants' argument is that they did not fail to perform any contractual obligations and, on the contrary, acted consistently with the express terms of them. Plaintiff's Response to the instant motion, and in particular her lack of response to Defendant's Statement of Undisputed Material Fact, raises no issue of fact for the Court to consider on this point.  Thus, the Court must deem it undisputed that Plaintiff did not fail to perform any contractual obligations owed to Plaintiff.[8]  Absent non-performance, there also can be no damages caused by the breached contract.  Accordingly, it is RECOMMENDED that Defendants' Motion for Summary Judgment as to Plaintiff's breach of contract claim be GRANTED.

---

[8]  Although the Court need not reach the question of whether non-performance in fact occurred because there is no evidence in the record in dispute, the Court notes that Defendants provided substantial evidence demonstrating that the contracts with Plaintiff allowed for changes in her compensation scheme with minimal notice and that they all applied to everyone in various positions or locales equally.

## IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED.

**SIGNED** this 24th day of July, 2019.

> s/ Charmiane G. Claxton
> CHARMIANE G. CLAXTON
> UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**